IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | Case No. 1:20-MJ-286 |
| | ) | |
| DIDIER KINDAMBU | ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Charles W. Sublett, being first duly sworn, hereby affirm and state:

INTRODUCTION AND AGENT BACKGROUND

1.      I am currently employed as a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI"), and have been so employed since August 2019.  I am currently assigned IRS-CI's Washington Field Office in the District of Columbia.  I have received 26 weeks of training in general law enforcement and criminal investigations into violations of the Internal Revenue Code, financial crimes, and money laundering.  In addition to my law enforcement training, I am a Certified Public Accountant, Certified Fraud Examiner, and hold a Master's Degree in Accounting and Information Systems from Virginia Tech.  Before working for IRS-CI, I served as a Senior Forensic Accountant for Deloitte Financial Advisory Services where I advised federal law enforcement agencies regarding complex third-party money laundering investigations.  In the course of my training and experience and in the course of conducting criminal investigations, I have interviewed subjects and cooperating witnesses, conducted physical surveillance, analyzed financial records, traced funds and illegal proceeds, and prepared and executed seizure, search, and arrest warrants.  I am assigned to this investigation and have participated in it since initiation.

2.     I respectfully submit this affidavit in support of an application for a criminal complaint charging DIDIER KINDAMBU ("KINDAMBU") with one count of bank fraud, in violation of 18 U.S.C. § 1344, and for an arrest warrant for KINDAMBU, pursuant to Federal Rule of Criminal Procedure 4(a).

3.     This affidavit is intended merely to show that there is sufficient probable cause for the requested complaint and arrest warrant.  Since this affidavit is submitted for the limited purpose of obtaining the complaint and arrest warrant, I have not set forth each and every known fact pertinent to this investigation and have included primarily those facts that I believe are necessary to establish probable cause.  The information provided is based on my personal knowledge and observations during this investigation, information conveyed to me by other officials, law enforcement officers, and my review of records, documents, and other evidence obtained during this investigation.

4.     Based on my training and experience and the facts set forth in this affidavit, I submit that there is probable cause to believe that KINDAMBU has engaged in bank fraud, in violation of 18 U.S.C. § 1344.

5.     The criminal conduct under investigation relates to a suspected fraud committed in connection with the Paycheck Protection Program ("PPP") administered by the Small Business Administration ("SBA").  In or around March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, of which the PPP was one component. Through the PPP, Congress authorized the award of hundreds of billions of dollars in forgivable loans to small businesses, for the purpose of enabling those businesses to continue to pay salary or wages to their employees.  To apply for a forgivable loan under the PPP, a business must submit an application to a participating financial institution.  If a PPP loan application is

approved, the participating lender funds the PPP loan using its own money. The SBA, in turn, guarantees the repayment of the loan.

6.      An applicant seeking a PPP loan is required to disclose to participating lenders, among other things, the applicant's number of employees and average payroll expenses. The applicant also must agree to use any funds disbursed through the program only "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments as specified under the Paycheck Protection Program Rule."

7.      As described in more detail below, the government's investigation indicates that KINDAMBU fraudulently applied for and obtained two PPP loans, and then used the proceeds of those loans, in part, for items unconnected to payroll or any permissible expense.

8.      On or about April 6, 2020, KINDAMBU submitted a PPP loan application to Bank of America, N.A. ("BOA") on behalf of Papillon Holdings, Inc. (At all times relevant to this investigation, the deposits of BOA were insured by the Federal Deposit Insurance Corporation ("FDIC"); BOA therefore constituted a "financial institution" for purposes of 18 U.S.C. §§ 20 and 1344.) In that application, KINDAMBU claimed that Papillon Holdings, Inc. had eighteen full-time employees with an average monthly payroll of $702,450. As a part of that application process, KINDAMBU supplied BOA with an Excel spreadsheet file that purported to be payroll records for employees of Papillon Holdings, Inc. This spreadsheet purported to identify eighteen employees of Papillon Holdings, Inc. and listed total payroll expenses of $7,181,522 for 2019.

9.      There are several indications that these records are false, and that many if not all of the claimed employees are fictitious. First, the spreadsheet claims that Papillon Holdings, Inc. made over $600,000 in unemployment contributions in 2019 to the Commonwealth of Virginia,

but the Virginia Employment Commission has no record of any payments being made on behalf of that entity. Second, the spreadsheet uses precisely the same formula to calculate the amount of money allegedly withheld on behalf of each supposed employee. Legitimate payroll records typically reflect varying rates of withholding, as employees often fall into different tax brackets or elect different withholdings or exemptions. The spreadsheet also overstates the amount of Social Security withholdings and contributions that legitimately would have been assessed against employees making the amount of money claimed in the spreadsheet. Third, the spreadsheet claims a total of over $7,000,000 in payroll expenses for Papillon Holdings, Inc. in 2019. But the total cumulative disbursements in 2019 reflected in all accounts identified so far in this investigation held in the name of Papillon Holdings, Inc., was less than $2,500,000. Fourth, the spreadsheet submitted by KINDAMBU claims that Papillon Holdings, Inc. withheld $2,513,543.20 in federal income taxes from its supposed employees for 2019, and further claims that it withheld $128,992.06 in federal income taxes from its supposed employees for the first quarter of 2020. But the IRS has confirmed that, as of September 29, 2020, Papillon Holdings, Inc. had not filed a quarterly payroll return, known as a Form 941, for any quarter in 2019 or 2020, and had not filed an annual unemployment tax return, known as a Form 940, for 2019 or 2020. (A Form 941 is a quarterly return through which an employer reports the amount of federal income taxes, Social Security taxes, and Medicare taxes withheld on behalf of its employees, and pays those amounts over to the IRS. A Form 940 is an annual unemployment tax return wherein an employer lists, among other things, the total payments it made to its employees for the reported year.)

10.     Also on or about April 6, 2020, KINDAMBU applied for another PPP loan from BOA, this time on behalf of Papillon Air, Inc. In that application, KINDAMBU falsely certified

that, "[d]uring the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under this program." KINDAMBU represented in that application that Papillon Air, Inc. had twenty-seven full-time employees with an average monthly payroll of $1,980,000. As a part of that application process, KINDAMBU later supplied BOA with an Excel spreadsheet file that purported to be payroll records for employees of Papillon Air, Inc. The supporting Excel spreadsheet states that the employees were employed by Papillon Air Inc. and were receiving wages as of March 27, 2020.

11.     The evidence indicates that these records also are fraudulent. First, the spreadsheet represents that Papillon Air, Inc. made over $400,000 in unemployment contributions in 2019 to the Commonwealth of Virginia, but the Virginia Employment Commission has no record of any payments being made on behalf of that entity. Second, the spreadsheet uses precisely the same formula to calculate the amount of money allegedly withheld on behalf of each supposed employee and overstates the amount of Social Security withholdings and contributions that legitimately would have been assessed against employees being paid the asserted amounts. As noted above, this is not consistent with legitimate payroll records. Third, the spreadsheet claims a total of over $10,000,000 in payroll and independent contractor expenses for 2019. But the total cumulative disbursements in 2019 reflected in all accounts identified so far in this investigation held in the name of Papillon Air, Inc., was approximately $800,000. Fourth, the spreadsheet submitted by KINDAMBU claims that Papillon Air, Inc. withheld $1,806,749 in federal income taxes from its supposed employees for 2019, and further claims that it withheld $451,687.25 in federal income taxes from its supposed employees for the first quarter of 2020. But the IRS has confirmed that, as of September 29, 2020, Papillon Air,

Inc. had not filed a Form 941 for any quarter in 2019 or 2020, and had not filed a Form 940 for 2019 or 2020.

12. On or about May 6, 2020, BOA disbursed approximately $2,126,753 in PPP loan funds to BOA account number 435043410536 held in the name of Papillon Air Inc. ("BOA 0536"). On or about May 14, 2020, BOA disbursed approximately $375,000 in PPP loan funds to BOA account number 435037906713 held in the name of Papillon Holdings Incorporated ("BOA 6713"). An analysis of bank and other financial and business records shows that, after receiving these proceeds, KINDAMBU spent a substantial portion of the proceeds on items unrelated to payroll, mortgage interest payments, lease payments, or utility payments. For example, as described in more detail below, financial records show that KINDAMBU subsequently used the fraud proceeds towards the purchase of all or part of a Lexus automobile, and all or part of a Cessna 172S aircraft. Financial records show that KINDAMBU also transferred some of the fraud proceeds into an account in the name of "Papillon Air Maintenance," and subsequently spent some of those proceeds on payroll for that entity. But records from the Virginia Corporation Commission show that Papillon Maintenance Services, Inc. was not formed until April 28, 2020, after KINDAMBU applied for both loans from BOA. Payroll records from Paychex, a payroll processing company, further show that the payroll disbursements made by KINDAMBU through Papillon Maintenance Services, Inc. were for employees who do not appear to have been hired until June 2020, whose names do not match the suspected fraudulent names in the spreadsheets provided to BOA, and who are being compensated far less than the salaries represented for the suspected fraudulent spreadsheets.

13.     Based on the forgoing, as well as the training and experience of other law enforcement agents with whom I have spoken and my own experience, I respectfully submit that there is probable cause to believe that DIDIER KINDAMBU committed bank fraud, in violation of 18 U.S.C. § 1344.

Respectfully submitted,

Charles W. Sublett
Special Agent
IRS-CI

Subscribed and sworn to in accordance with
Fed. R. Crim. P. 4.1 by telephone on October 16, 2020

The Honorable John F. Anderson
United States Magistrate Judge
Eastern District of Virginia